Mott, Ch. J.,
delivered the opinion of the court:
This is an action brought by a postmaster to recover a balance of salary unpaid. The claim arises under the Act 3d March, 1883 (22 Stat. L., p. 487), which directs the Postmaster-General to readjust the salaries of certain postmasters and to allow and pay to them such balance as may be found to be due. It has been decided by the Supreme Court in a similar case that such an action can not be maintained unless a readjustment has preceded it. (McLean v. United States, 95 U. S. It., 750.) Pursuant to the requirements of a subsequent act (4th Aug'ust, 1886; 24 id., p. 308) the Postmaster-General did make a readjustment of such salaries. It is contended by the claimant’s counsel that such readjustment was not made in conformity with the law, but that in this particular case a subsequent readjustment was made by the Postmaster-General, upon which the present action stands.
The claimant seeks to establish this last readjustment by producing a duly exemplified copy of certain correspondence between the Postmaster-General and a Senator of the United States. This correspondence began on May 31, 1897, by a letter addressed by Senator Foraker to the Postmaster-General. It begins by stating that “complaints are made of alleged wrongs suffered by citizens of Ohio, who served as postmasters between 1864 and 1874, by what is claimed to be *439 a denial of compensation due under the readjustment salary-statute of March 3,1883.” It concludes by the “request that you will furnish me from the files of the Department copies of two readjustments of the salary of Hester A. Birdsong, who was postmaster at Bellaire, Ohio; one made upon her eight returns immediately preceding the biennial adjustment of July 1,1870, the other made upon her eight returns immediately preceding her biennial adjustment of July 1, 1872.” In a subsequent letter, June 23,1897, he says:
' -“It was the purpose of my letter of the 31st ultimo to obtain copies of papers illustrating the executive acts required by the statute of March 3, 1883, and performed by authority of the Postmaster-General. No reason was known to me why these acts should not be áhown to anyone whose rights were involved therein. T am gratified to know that the postmasters in the State of Ohio whose rights are involved in such acts of the Postmaster-General are to be accorded a free examination of the same.”
And again:
“It is my earnest desire to obtain the necessary-data to bring the clear, legal rights of the Ohio postmasters to an early consideration by the Congress.”
The Postmaster-General replied by letter June 18,1897, the opening sentence of which is as follows:
“In compliance with your request of the 31st ultimo I send you herewith copies from the records of the Auditor for the Post-Office Department of the receipts of the post-office at Bellaire, Ohio, during the term served as postmaster by H. A. Birdsong, and of .the post-office at Harpers Ferry, W. Va., during the term served as postmaster by W. F. Wilson, a statement of the computation made on those receipts by the Post-Office Department in the readjustment of salaries of these late postmasters under the act of Congress, March 3,1883, and statements of computations which I have made by the method of readjustment urged by claimants.”
At this point the examination of the case must stop. It is manifest that the correspondence was to all intents and purposes a correspondence between the legislative and executive branches of the Government; that it was begun by the assurance that its object was, on the part of a Senator of the United States, “to obtain full information upon what appears to be one fundamental question at the bottom of the whole controversy,” and was continued with the further assurance that it
*440 was bis “earnest desire to obtain the necessary data to bring the clear, legal rights of the Ohio postmasters to an early consideration by the Congress.”
On the part of the Postmaster-General it as clearly appears that his communications were in compliance with that request, and that the statements of computations which he made and which he inclosed to the Senator were “made by the method of readjustment urged by claimants.” In other words, the correspondence was for the purpose of informing Congress concerning the action of an Executive Department and the nature of the controversy which existed between it and certain postmasters, and with a view to future legislation.
It seems manifest to the court that the two statements of the computations made by the Postmaster-General, at the request of a Senator, did not constitute a readjustment of the postmaster’s salary, and that the one statement was no more a readjustment than the other. The paper relied upon as a readjustment was a mere abstract of bookkeeping,, made up clerically from the accounts of the Department upon a formula propounded by the postmaster but never adopted by the Postmaster-General. It does, indeed, inform the court what would be the result of a readjustment such as the postmaster thinks she is legally entitled to, in dollars and cents. If the Postmaster-General had made such a readjustment, which, through some oversight, had never been credited to the postmaster, the paper would enable the court to ascertain what should be the amount of its judgment. But the statement can do nothing more. It can not create a cause of action; and, under the decision of the Supreme Court above cited, this court can do nothing more. It can enforce a readjustment, but it can not direct the Postmaster-General as to what readjustments he should make. A readjustment furnishes the only cause of action in this class of cases upon which a postmaster can maintain an action.
The judgment of the court is that the petition be dismissed.